## HARVEY D. EATON *vs.* FRED MCINTIRE.

### Kennebec.    Opinion March 6, 1896.

*Railroad.    Mileage Book.    Custom.*

Mileage books contain a contract between the railroad and the passenger, to which the latter affixes his name, and expressly provide that the coupons shall be detached by the conductor. *Held*, that this provision fairly implies that the conductor has the right to determine from what part or parts of the book the coupons shall be taken.

The plaintiff handed his mileage book to the conductor and requested him to take his fare from the back part of it. The coupons were numbered in regular order from front to back and a portion of the leaves in the back part only had been detached, leaving six or eight coupons that were a part of the last leaf. The conductor took off these coupons from the last sheet and the remainder of the passenger's fare from the front of the book. *Held*, that the plaintiff had no right to determine from which part of the book his fare should be taken; and that the conductor in detaching coupons from the front part of the book, contrary to the passenger's request, did not exercise an unlawful dominion over the book.

ON REPORT.

This was an action of trover for the conversion of a railroad mileage book issued by the Maine Central Railroad Company to the plaintiff. The action was entered in the Municipal Court of Waterville where judgment having been rendered for the defendant, the plaintiff appealed to the Superior Court for Kennebec county and reported by that court for the decision of the Law Court.

Plea, general issue and the following brief statement :

"And for a brief statement of special matter of defense to be used under the general issue above pleaded, the said defendant further says : that if he took the Maine Central railroad mileage tickets as alleged in the plaintiff's writ, he took them in his capacity of servant and conductor of the Maine Central Railroad Company, and took them from a mileage book presented to him by the plaintiff as payment of the plaintiff's fare, as a passenger on a passenger train of said railroad company, running from Augusta Maine, to said Waterville, and that the defendant took

such coupons for the payment of the plaintiff's fare on said railroad from said Augusta to said Waterville as required by said company and by virtue of a contract between said railroad company and said plaintiff, and that the number and amount of coupons so taken by said defendant amounted to the lawful and established fare for a passenger (and for the defendant's fare) between Augusta and Waterville."

The plaintiff introduced the mileage book, containing a contract of which the following is a copy.

"CONTRACT.

"In consideration of the reduced rate at which this ticket is sold by the Maine Central Railroad, it is accepted by the purchaser subject to the following conditions, viz:

"1.    That this ticket entitles the purchaser to stop only at stations which by the time-card are designated as regular stopping places for the train on which it is presented.

"2.    That one coupon shall be detached by the conductor for each mile traveled, except that for distances less than three miles, three coupons shall be surrendered, and that all fractions of a mile shall be computed a mile in calculating distances traveled.   All distances traveled shall be computed and determined by the mileage tables issued by the Maine Central Railroad, to conductors, and the computation of distances exhibited therein is hereby accepted by the purchaser of this mileage ticket as the basis for estimating the amount of transportation to be performed hereon.

"3.    That whenever during a passage made on this book a change of conductors is made, each conductor must detach one coupon for each mile, or fraction thereof traveled on the train while under his charge.

"4.    That detached coupons will not be received for passage.

"5.    That if the coupons remaining attached hereto at any time are insufficient to carry the purchaser to destination such coupons will be good only for the distance to the farthest station which they represent, and full local fare will be paid from such station for the remainder of the journey.   Coupons remaining in this book may be used in connection with another book.

"6. That this ticket will be surrendered to the conductor when the last coupons are detached.

"7. That this ticket will not be honored unless officially stamped.

Harvey D. Eaton."

The plaintiff also testified : . . .

"On the afternoon of the 25th of June, 1894, I got on board the train at Augusta, bound for Waterville, No. 11, I believe it is called, and had with me this mileage book. There had been taken from it at that time some five or six leaves from the back part of the book. No coupons had been taken from the front part of the book. It had originally, I suppose, fifty leaves. There were somewhere in the neighborhood of forty-five leaves left in the book. There were six or eight coupons that were a part of a leaf, the rest of the leaf having been torn off, the same as it is now. The conductor, Mr. McIntire, came along and in his round of taking the tickets, I handed up this book open at the back, I think I held it in that way, with one whole leaf open and that portion of the leaf there. I held it up and said : 'Take my fare from the back, please.' He took the book in his hand and said : 'What did you say?' I said, 'Take my fare from the back, please.' He said, 'I will take off those loose ones there and the rest from the front.' I said, 'Take the rest of my fare from the back, please.' He said, 'I have no such orders,' turned the book over and took off twelve or fourteen coupons from the front of the book, and handed it back to me. That was the transaction substantially as it took place and all that there was to it."

"The court. Do you make any point here that any more coupons were taken than were actually required for the fare. Ans. Not in the least." . . .

The defendant testified : . . .

"State what happened? Ans. He asked me to take his mileage from the back of his book. I said it was not the custom but I would clean up the back leaf. I took that off, and the remainder of the mileage from the front leaf of the book."

"Ques. What did you do with those coupons? Ans. I punched them and returned them to the general office."

"Ques. Are you requested by the railroad company to do that? Ans. Yes."

"Ques. Do you know what is the custom of the conductors in taking out coupons? Ans. Always commencing at the front part of the book."

"Ques. I will inquire of you what the reason of that is, why they are taken from the front part instead of the back. Ans. It is a great deal easier to take the mileage that way."

"Ques. State why. Ans. If you commence from the front part of the book, you can count up your leaves faster than to commence at the back. When there are any odd miles, it is easier to get the correct ones." . . .

*Harvey D. Eaton*, for plaintiff.

The plaintiff being the legal owner of the book and having a reasonable desire to preserve the unused portion in a certain form, the defendant cannot be allowed without having or giving any reason whatever to disregard the plaintiff's wishes. The defendant's claim is the right to arbitrarily mutilate books regardless of all desires of owners.

*Edmund F. and Appleton Webb*, for defendant.

The contract is to be construed according to the intention of the parties. *Ames* v. *Hilton*, 70 Maine, 36.

If the words in the contract are of doubtful import, or susceptible of different constructions, the circumstances under which it was made, and the object to be obtained, may be considered to enable the court more intelligently to ascertain from the language used the meaning of the parties. *Veazie* v. *Forsaith*, 76 Maine, 179.

The plaintiff has only a special property in the mileage book, the general property or title being in the railroad company.

True, when the plaintiff bought his mileage book he might destroy it, he might keep it and never present it to the railroad company, and not incur any legal liability, yet he has but a special property in the book.

Benjamin on Sales, § 2, says: "In law, a thing may in some cases be said to have, in a certain sense, two owners, one of whom has the general and the other the special property in it; and a transfer of the special property is not a sale of the thing." . . . "When goods are delivered in pawn or pledge, the general property remains in the pawner, and the special property is transferred to the pawnee."

When the railroad company delivered the mileage book to the plaintiff, it was only for a special purpose, viz: that the plaintiff when he rode might deliver it to the conductor for him to detach the necessary number of coupons to pay his passage. The conductor was the only person who had the right to detach coupons. It is in the contract signed by the plaintiff, that detached coupons should not be received by the company for passage. The plaintiff could not detach them.

The word "surrendered" in the sense it is used in this contract is significant of title to the mileage book in the railroad company.

Parol evidence is admissible to prove the custom or usage testified to.

It does not contradict the contract, but is admissible to ascertain and explain the meaning and intention of the parties. It is also admissible and competent on the point that the plaintiff knew of the existence of the custom and usage and must be presumed to have contracted in reference to it when he signed the contract June 5th, 1894. *Robinson* v. *U. S.* 13 Wall. 363.

The office of custom or usage in part is to ascertain and explain the meaning of the parties to the contract. It is used as a mode of interpretation on the theory that the parties knew of its existence and contracted with reference to it.

It is often employed to explain words or phrases in contracts of doubtful signification, or which may be understood in different senses, according to the subject matter to which they are applied. *Barnard* v. *Kellogg*, 10 Wall. 390.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITEHOUSE, WISWELL, JJ.

WALTON, J. This is an action of trover against a railroad conductor for the alleged conversion of a mileage book. The plaintiff handed his mileage book to the conductor and requested him to take his fare from the back part of it. The conductor complied with the request in part and disregarded it in part. That is, he took part of the plaintiff's fare from the back part of the book and part from the front. The plaintiff claims that he had a right to determine from which part of the book his fare should be taken, and that the act of the conductor in detaching coupons from the front part of the book, contrary to his (the plaintiff's) request, was an unlawful exercise of dominion over the book; and, in law, a conversion of it to the defendant's use.

We do not think this proposition can be sustained. We think it was the right of the conductor to determine from what part or parts of the book he would take the plaintiff's fare. The contract of the parties annexed to the book, and signed by the plaintiff, expressly provides that the coupons shall be detached by the conductor, and we think this fairly implies that the conductor shall have the right to determine from what part or parts of the book they shall be taken. The work of collecting fares must sometimes be performed very rapidly; and to compel conductors to listen to the requests of passengers as to the manner in which the work shall be performed would necessarily be attended with some inconvenience and delay; and, so far as we can discover, with very little, if any, benefit to the passengers. It therefore seems to us that upon principle the right to determine from what part or parts of a railroad mileage book a sufficient number of coupons shall be taken to pay a passenger's fare, ought to belong to the conductor. The act is his, and it seems to us that, upon principle, the choice should be his. And this conclusion is supported by what has heretofore been customary. The evidence shows what our own observation confirms, that ever since these mileage books came into use, the custom has been for the conductor to detach a sufficient number of coupons to pay the passenger's fare from the front part of the book. Not always taking the entire number consecutively; but by detaching whole leaves and such fractions of leaves as he

deems best calculated to make the computation easy and the removal convenient. And what is customary is generally lawful. Custom makes law. As said by Chief Justice WHITMAN more than half a century ago, and confirmed by a multitude of cases since that time, " every contract must have an interpretation governed in some measure by the subject matter to which it relates ; and, at the same time, with reference to any known usage connected with it." *Robinson* v. *Fiske*, 25 Maine, 401.

*Judgment for defendant.*